UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Enrico VACCARO and | ) | |
| Marie VACCARO, By and Through | ) | Civil No. |
| Her Next Friend and Son, | ) | |
| Enrico VACCARO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| YALE-NEW HAVEN HOSPITAL, | ) | |
| and PETER N. HERBERT, M.D. | ) | May 7, 2015 |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### I.      INTRODUCTION

1.      This action is brought by the Plaintiffs to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulation, 28 C.F.R. Part 36, and Section 504 of the of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a), and to redress claims of intentional and negligent infliction of emotional distress against Defendants Yale-New Haven Hospital (the "Hospital") and Peter N. Herbert, M.D. ("Dr. Herbert").

2.      The Hospital and Dr. Herbert have barred Mr. Enrico Vaccaro from visiting his elderly and disabled mother, Marie Vaccaro, who is a stroke victim and patient at the Hospital.  Mrs. Vaccaro ("Marie") is unable to move, eat or speak on her own, and until Defendants wrongfully barred him from doing so, Mr. Vaccaro had been visiting her 4 to 5 hours each day, acting as her advocate and her primary means of communication.  By denying him the ability to visit his mother and immediately

communicate her medical needs, they are discriminating against Marie by denying her a means of effective communication in violation of Title III of the ADA and its implementing regulations, as well as Section 504.  The defendants are additionally discriminating against Mr. Vaccaro by reason of his association with Marie.  Moreover, they are denying Marie her only source of comfort – her children.  The defendants' actions are extreme and outrageous and have resulted in severe emotional distress and humiliation to both Marie and her son, Mr. Vaccaro.

3.     To redress these violations, Plaintiffs seek a temporary restraining order, permanent injunctive relief, compensatory damages, and attorney's fees and costs against the Defendants, and such further relief as this Court deems just and proper

## II.    PARTIES

4.     The Hospital is a place of "public accommodation" covered by Title III of the ADA.  42 U.S.C. § 12181(7); 28 C.F.R § 36.104.  In addition, the Hospital is a recipient of Federal financial assistance including through its participation in the Medicare program.  *See* Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. Thus, the Hospital is also covered by Section 504, 42 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84.

5.     At all times relevant to this action, Dr. Peter Herbert was an agent, employee and representative of the Hospital and acting within the scope of his employment.

6.     Plaintiff Marie Vaccaro is an 87-year-old patient at the Hospital.  On or about February 25, 2014, Marie suffered a massive stroke and sustained global aphasia and hemiplegia of the right face, arm and leg.  The stroke rendered Marie unable to fully

understand or express speech, and unable to eat; thus, she is an individual with a disability within the meaning of the ADA.  See 42 U.S.C. § 12102.  The majority of her nutrition and hydration is administered through a nasoenteric feed tube. Due to the hemiplegia, Marie cannot reach out to push the call button in her room at the Hospital should she need someone to help her.  Complicating her medical picture, Marie also suffers from atrial fibrillation, high blood pressure, congestive heart failure, recurring urinary tract infections, and many other health conditions.  Marie's prognosis is dire and she is likely very near the end of her life.[1]

7.      Plaintiff Enrico Vaccaro is Marie's son.  Mr. Vaccaro, who is also an attorney, has visited his mother every day for at least four to five hours at a time since she was first hospitalized.  He and his sister have been her only source of comfort.  Mr. Vaccaro has been her advocate and primary source of communication with the staff at the Hospital regarding her medical needs.

III.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 42 U.S.C. § 12188(a) and 28 U.S.C. §§ 1331 and 1345.  The Court additionally has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

9.      This Court has personal jurisdiction over the Defendants.  Defendant Yale-New Haven Hospital is a Connecticut domestic corporation operating a hospital in New Haven, Connecticut.  Defendant Peter Herbert, M.D. is an officer, agent and employee of Defendant Hospital working in its New Haven location and believed to be a resident of the State of Connecticut.

---

[1] Prior to the stroke, Marie lived independently at home, taking care of her husband who is 95 years old and had suffered a hip fracture before the stroke.  Marie's husband now lives in a nursing home and he is not able to visit Marie.

10.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are located in this district.  Venue is further proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

IV.    FACTS

11.     On or about March 28, 2014, Marie was discharged from the Hospital to a nursing home for care and rehabilitation.  However, she was readmitted on April 13, 2014, due to increasing lethargy and decreased oral intake.  She was then diagnosed with atrial fibrillation, urinary tract infection and hypothyroidism.  After meeting with the medical team regarding goals for care, Marie's children agreed on April 14, 2014 to DNR/DNI ("Do Not Recuscitate/Do Not Intubate") status for Marie.  Thereafter, the Hospital recommended Marie undergo a procedure to insert a more permanent feeding tube (PEG tube) so that she could be transferred again to a nursing home facility.  Given all the circumstances and Marie's fragile medical condition, the family refused PEG placement primarily due to the unacceptable risk of complications, including death.

12.     The medical team at the Hospital who are caring for Marie thereafter consulted with the Hospital's bioethics committee to determine if they could compel the family (the patient's surrogates) to consent for the invasive PEG procedure necessary for her to progress to "her next destination of institutionalization."  The Hospital's bioethical committee determined that the family could not be compelled to consent to this inherently risky procedure, particularly given Marie's many other medical conditions. The bioethics committee recommended that the discussions going forward focus on

realistic, ultimate goals for Marie, and that limiting care does not mean withdrawing care but, rather, enhancing care to provide optimal comfort for the patient. *Id*.

13.     Mr. Vaccaro has been vocal in advocating for his mother's medical needs while at the Hospital. For example, during his visits, he has brought to the attention of Hospital staff symptoms of discomfort experienced by Marie that revealed she had been suffering from an undiagnosed urinary tract infection. It took several instances of advocacy by Mr. Vaccaro to get the Hospital staff to finally test Marie for such infection and additional advocacy to secure treatment for her infection.

14.     In addition, one day while visiting Marie, Mr. Vaccaro observed her shaking uncontrollably. He became alarmed and thought she was having another stroke. When he immediately brought this to the attention of medical staff, he was told a doctor would be in to check on Marie "in about 15 to 20 minutes." The doctor assessed Marie about 15 minutes later and concluded she had had a seizure. The resulting 15 minute delay in assessing what was happening to Marie, given her history of stroke and fragile medical condition, was unacceptable in Mr. Vaccaro's view, as it would be to any reasonable person of average intelligence and empathy.

15.     Mr. Vaccaro, as Marie's son, has known her for more than 60 years. He is the only member of the family who has the ability and flexibility to visit Marie for five hours each day during evening hours. He is in the best position to observe differences in her affect, interpret expressions or other signs of communication and help communicate with medical staff at the Hospital, as he is her son and also has considerable experience with and knowledge of medical issues from his personal injury practice. Various medical organizations with expertise in treating disabilities resulting from stroke have recognized

5

the unique and important role of family members in helping stroke victims when speech

impairments are present.  As medical experts at one such organization have explained:

> [O]ne of the most critical elements in a patient's rehabilitation from stroke is the strength and commitment of their primary support system—usually their family.

> [F]amily members can be particularly helpful when it comes to identifying the best ways to psychologically motivate the patient. Family members may also be particularly adept at interpreting communications and signs when speech impairments are present. Family members know the patient better than we ever can. We try to involve them as much as possible. Their commitment often makes a world of difference in terms of recovery.

*See Family Plays Critical Role in Stroke Recovery,* American Academy of Physical and

Rehabilitative Medicine, which can be found at

https://www.aapmr.org/patients/conditions/neurologic/Pages/familystroke.aspx (internal

quotations omitted).

16.     On or about April 23, 2015, in response to Mr. Vaccaro's advocacy for his

mother's medical needs, the Hospital, through Dr. Herbert, its agent, representative and

employee, sent Mr. Vaccaro a letter by facsimile notifying him that he was no longer

permitted to interact directly with medical staff while visiting his mother at the Hospital

and that any further communication by him with the staff of the Hospital concerning his

mother's medical needs "is to be made in writing directly" to Dr. Herbert.  Dr. Herbert

additionally instructed medical staff responsible for Marie's care to disregard anything

that Mr. Vaccaro tells them or asks them.

17.     This directive has placed Marie in serious danger, as she cannot

communicate with staff concerning her needs, cannot even push a call button to let

medical staff know if she is any physical distress, and relies upon Mr. Vaccaro during his

daily 4 to 5 hour visit to communicate and advocate for her.  Requiring Mr. Vaccaro to

put any requests for medical attention relating to Marie only in writing to Dr. Herbert, unnecessarily delays care or treatment of any urgent medical need not noticed by staff during their occasional visit to Marie's room.[2]

18.     Finally, on or about April 30, 2015, the Hospital, through Dr. Herbert barred Mr. Vaccaro from visiting his mother, Marie at the Hospital, thereby completely denying her effective communication.  The Hospital and Dr. Herbert's actions are extreme and outrageous in light of the circumstances here, where Marie cannot communicate her medical needs on her own, Mr. Vaccaro's sister cannot be present with Marie as often and during the hours that Mr. Vaccaro can be with her.  The defendants are further denying Marie the comfort of her first born child, one of only two family members who can visit her.  This conduct is also extreme and outrageous in light of the fact that Marie has lost everything else in her life:  her ability to move, speak, and eat on her own; the companionship of her long-time husband; and the ability to interact with her children.  All she has left is seeing her children visit her.  Now, the Hospital is preventing her only source of comfort and companionship.

19.     Worse yet is the Hospital's (and its agent, employee and representative, Dr. Herbert's) motivation in barring Mr. Vaccaro from visiting Marie:  to hasten her death so she no longer uses "bed space" and medical resources for which the Hospital is likely no longer getting reimbursed by Medicare.

20.     The Hospital's actions violate both the spirit and the letter of Title III of the ADA by:  1) denying equal goods, services, facilities, privileges, advantages,

---

[2]  By letter dated April 28, 2015, Mr. Vaccaro filed a complaint with the Connecticut Department of Public Health ("DPH") regarding the Hospital and Dr. Herbert's actions and asking for an expedited investigation. Mr. Vaccaro sent a second letter to DPH dated April 30, 2015, informing the DPH that the Hospital now has banned him from the premises. To date, he has not heard from the DPH regarding his complaint.

accommodations, or other opportunities to Marie by failing to provide her with a means of effective communication; and 2) by excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Marie's son, Mr. Vaccaro because of the known disability of Marie.

21.     In addition, the Hospital and its agent, representative and employee, Dr. Herbert, have intentionally inflicted emotional distress by harassing Mr. Vaccaro every time he would communicate his mother's medical needs, by denying Marie needed medical care, and by barring Mr. Vaccaro from visiting Marie at the Hospital when he is her voice – her advocate and her only means of effective communication when she is in an incredibly fragile medical state and likely very near the end of her life.

22.     As a result of Defendants' actions, Marie and her son, Mr. Vaccaro, have suffered and continue to suffer severe emotional trauma and humiliation.

23.     Because of their association with Marie, Marie's son, Mr. Vaccaro are being denied the full and equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the Hospital.

24.     The Hospital's discrimination has caused and continues to cause Marie and her son, Mr. Vaccaro, anxiety, severe emotional pain, and anguish.

## V.     CAUSES OF ACTION

### COUNT I – AGAINST DEFENDANT HOSPITAL
### TITLE III OF THE AMERICANS WITH DISABILITIES ACT

25.     The allegations of Paragraphs 1 through 24 are hereby re-alleged and incorporated by reference as if fully stated herein.

26.     The Defendant Hospital is discriminating against Marie Vaccaro on the basis of Marie's disability and denying her the full and equal enjoyment of its goods,

services, facilities, privileges, advantages, or accommodations in violation of Title III of

the ADA, 42 U.S.C. § 12182(a) and the Title III implementing regulation at 28 C.F.R.

Part 36, by:

> a.      failing to provide Marie with a means of effective communication;

> b.      barring her son, Mr. Vaccaro from visiting her and acting as her
advocate and effective means of communication, which constitutes a denial of the
opportunity to participate in or benefit from the goods, services, facilities,
privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. §
12182(b)(1)(A)(i) and 28 C.F.R. § 36.202;

> c.      excluding or otherwise denying equal goods, services, facilities,
privileges, advantages, accommodations, or other opportunities to Marie's son,
Mr. Vaccaro because of the known disability of Marie, in violation of 42 U.S.C. §
12182(b)(1)(E) and 28 C.F.R. § 36.205.

27.     Defendant Hospital's actions were and are willful and intentional.

28.     As a direct and proximate result of Defendant Hospital's discriminatory

actions, Plaintiffs have suffered and continue to suffer losses and damages including

severe emotional distress, anguish and humiliation.

## COUNT II – AGAINST THE HOSPITAL AND DR. HERBERT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

29.     The allegations of Paragraphs 1 through 28 are hereby re-alleged and

incorporated by reference as if fully stated herein.

30.     Defendants Hospital, its agents, employees and representatives including

Dr. Herbert owe Marie, a disabled and very sickly individual in their care, a duty to care

for and protect Marie's health and well-being while at the Hospital, and afford her the opportunity and means of effective communication.

31.     Defendants have acted intentionally and willfully in depriving her of her only means for effective communication as well as the comfort of her oldest child, Mr. Vaccaro, one of only two family members who are able to visit her on a regular basis. Their conduct was and continues to be extreme and outrageous and offends their ethical and moral obligations as health care providers and fellow human beings.

32.     Defendants knew or should have known that their above described acts and omissions involved an unreasonable risk of causing Marie and Mr. Vaccaro severe emotional distress and that that distress, if caused, might have resulted in illness or bodily harm to Marie and her son, Mr. Vaccaro.

33.     As a direct and proximate result of Defendants' acts or omissions, Plaintiff Marie Vaccaro has suffered and continues to suffer severe emotional distress, anguish, humiliation, embarrassment and the loss of the comfort of her family.

## COUNT III – AGAINST DEFENDANTS HOSPITAL AND DR. HERBERT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

34.     The allegations of Paragraphs 1 through 34 are hereby re-alleged and incorporated by reference as if fully stated herein.

35.     Defendants Hospital and Dr. Herbert owe Marie, an elderly and very sickly patient in their care with a known disability, a duty to care for and protect Marie's health and well-being.

36.     Defendants were negligent and breached their duty of care in one or more of the following ways:

a.      by failing to provide Marie with a means of effective communication;  and

b.      by barring her son, Mr. Vaccaro from visiting her at the Hospital and not only comforting her, but also providing advocacy for her medical needs and her only means of effective communication.

37.      Defendants knew or should have known that their above acts and omissions involved an unreasonable risk of causing Marie severe emotional distress and that that distress, if caused, might have resulted in illness or bodily harm to Marie.

38.      As a direct and proximate result of Defendants' acts or omissions, Plaintiff Marie Vaccaro has suffered and continues to suffer severe emotional distress, anguish, humiliation, and the loss of comfort of her family.

## VI.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

A.      Grant judgment in favor of the Plaintiffs and declare that Defendant Hospital has violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, and Section 504.

B.      Permanently enjoin the Hospital and its officers, agents, employees (including Dr. Herbert), and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, and more specifically, enjoin them from prohibiting Mr. Vaccaro from visiting his mother, Marie, at the Hospital, and acting as her means of effective communication as well as advocating for her medical needs;

C.      Order Defendant Hospital to comply with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36;

E.      Award compensatory damages, including damages for pain, suffering, emotional distress to Marie, and her son, Mr. Vaccaro, who are persons aggrieved due to the Defendants' acts or omissions, in violation of the ADA, and in violation of state laws governing negligent and intentional infliction of emotional distress;

F.       Award attorney's fees and costs as well as pre-judgment and post-judgment interest; and

G.      Order such other relief as the Court finds appropriate and just.

**JURY TRIAL DEMANDED**


                                        Respectfully submitted,

                                        FOR THE PLAINTIFFS:

                                        */s/ Lisa E. Perkins*
                                        Lisa E. Perkins (ct23164)
                                        Law Offices of Lisa Perkins LLC
                                        543 Prospect Avenue
                                        Hartford, Connecticut 06105
                                        Tel:  860-578-8825
                                        Fax:  860-236-2234
                                        Email: lperkinslaw@gmail.com

<u>VERIFICATION</u>

     I, ENRICO VACCARO, do hereby declare and state, under penalties of perjury and pursuant to 28 U.S.C. § 1746, that the facts alleged in the Complaint herein are true and correct to the best of my knowledge and belief.


<u>5/7/2015    </u>                                       */s/ Enrico Vaccaro*
DATE                                            ENRICO VACCARO